IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEFF DaNIELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIGURE 8 COMMUNICATIONS, INC.,<br><br>Defendant. | Civil Action No.: 3:20-CV-00125-KRG<br><br>COLLECTIVE AND CLASS ACTION<br><br>*ELECTRONICALLY FILED* |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES
WITH MEMORANDUM IN SUPPORT**

Joseff DaNiell ("Mr. DaNiell" or "Named Plaintiff"), respectfully moves for approval of the Settlement reached in this Fair Labor Standards Act ("FLSA") collective action on behalf of all persons employed by Figure 8 Communications, Inc. ("Figure 8" or "Defendant") during the applicable statute of limitations period commencing July 2, 2017 who allegedly were not paid overtime for work performed on a piece rate basis and paid piece rates below the correct amounts. Named Plaintiff and all persons employed by Figure 8 opting in to this litigation (collectively "Plaintiffs") constitute a collective under the FLSA. Defendant does not oppose this Motion. To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' confidential Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1. Named Plaintiff respectfully requests that this Honorable Court enter an Order granting this motion and approving the Parties' Settlement.

## **MEMORANDUM IN SUPPORT**

Named Plaintiff and Defendant have reached a settlement of this FLSA collective action that provides participating class members monetary relief of 100% of their alleged unpaid wages, between July 2, 2017 through July 2, 2020, after payment of attorneys' fees and related expenses.[1] This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court. The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Defendants of case-critical payroll and time records, written and verbal correspondence with Named Plaintiff and other potential class members by Named Plaintiff's counsel, and significant settlement negotiations between counsel for each of the parties to bring about a resolution. In order to settle this matter, Defendant has agreed to pay a "Global Settlement Amount" of $27,500.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages that were alleged in the Lawsuit. The Global Settlement Amount shall be allocated as follows: (1) $8,500.00 shall be allocated to pay the claims of the FLSA Settlement Class (the "FLSA Settlement Fund"), and (2) $19,000.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

---

[1] All statements made herein regarding monetary relief to the participating class of 100% of their alleged unpaid wages, between July 2, 2017 through July 2, 2020, and a total FLSA Settlement Fund of $8,500, reflect the relief that would be provided under the terms of the Parties' Settlement Agreement if this Court approves the settlement and the requests for attorneys' fees and costs in the amounts requested herein. Should the Court approve the settlement and award attorneys' fees and costs in amounts less than the amounts requested, the amount of the FLSA Settlement Fund and individual awards for each participating class member will increase, as the FLSA Settlement Fund is equal to the difference between the Global Settlement Amount of $27,500 and the amounts awarded as attorneys' fees and costs.

Based on the time and payroll data exchanged by the Parties and their independent investigation of the relevant facts, including consideration of payments made by Figure 8 to some of its employees during the pendency of this litigation in an effort to address any alleged wrongdoing, and the relatively low number of individuals electing to opt in to this lawsuit after receiving notice, Plaintiffs' counsel believes the $8,500 FLSA Settlement Fund provides participating class members monetary relief of 100% of their alleged unpaid wages, between July 2, 2017 and July 2, 2020, plus liquidated damages, free and clear of attorneys' fees and costs, and subject to a $500 minimum payment per Opt-In Plaintiff.

**Facts and Procedural History**

On July 2, 2020, Named Plaintiff filed a class and collective action Complaint (Doc. 1) against Defendant on behalf of himself and others similarly situated alleging that they violated the FLSA, the Pennsylvania Wage Payment and Collection Law, 43 P.S. 260.1 *et seq.* and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.*, by failing to pay Named Plaintiff and similarly situated employees overtime for work performed on a piece rate basis and paid piece rates below the correct amounts and for overtime hours worked, as well common law claims for breach of contract and unjust enrichment. (Doc. 1). Defendants filed an Answer denying the material allegations of the Complaint on September 11, 2020. (Doc. 7).

The Parties conducted a Mediation Conference on February 21, 2021, and a follow-up Mediation Conference on March 16, 2021, but were unable to resolve the litigation despite the Parties' best efforts. However, despite not reaching a settlement on these occasions, the Parties agreed to continue settlement negotiations while moving forward with the litigation. This approach proved beneficial as an amicable compromise was ultimately reached on July 5, 2021, after the Parties continued reviewing the aforementioned time and payroll data that was

exchanged and proceeded through the conditional certification and notice stage of the litigation. The attorneys who negotiated this agreement are experienced wage and hour litigators and vigorously represented their clients' respective interests.

In preparation for the Mediation Conferences and ongoing settlement discussions, the Parties embarked on an investigation and exchange of information to ensure an informed and constructive discussion. The Parties exchanged critical class, payroll, and compensation data, and Plaintiffs' counsel consulted the Named Plaintiff and others electing to opt in to the litigation after receiving notice. In preparation for the Mediation Conferences and ongoing settlement discussions, the Parties evaluated the payroll data, as well as defenses which Defendant intended to raise to Plaintiffs' claims. Negotiations were robust as both sides zealously advocated their interests. As a result of discussions amongst the attorneys, the Parties were able to reach a mutually acceptable settlement.

**Settlement Terms**

The Parties have executed a Settlement Agreement that allows all Plaintiffs opting in to this litigation to participate in a settlement of the wage and hour claims asserted in this action. The Class is defined as: "[a]ll current and former employees of Figure 8 Communications, Inc. who were paid on a piece rate basis at any time within the period from three (3) years prior to July 2, 2020, to July 2, 2020, and at any time within the period from July 2, 2020 to the present." To the best of the knowledge and belief of Plaintiffs and Defendant, there are twelve (12) people in the Class.

The Settlement Agreement and Release of Claims provides for a "Global Settlement Amount" of $27,500.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages alleged in the lawsuit. The Global Settlement Amount will be

allocated as follows: (1) $8,500.00 will be allocated to the FLSA Settlement Fund, and (2) $19,000.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

The amount of settlement distributions to the members of the FLSA Settlement Class who opt in to the class was determined by using Figure 8's internal pay records. The settlement fund will be allocated amongst the Class Members with each Class Member receiving their individual wages due, less any amount already paid by Defendant to any Plaintiff during the pendency of this litigation in an effort to correct any alleged wrongdoing, plus 100% liquidated damages, with a minimum payment of $500. Settlement Payments to members of the FLSA Settlement Class shall be treated as 50% wages, to be reported on IRS Form W-2, and 50% non-wage damages, to be reported on IRS Form 1099, if required. Payments that are issued from the FLSA Settlement Fund shall reflect all applicable withholdings and previously authorized deductions.

Plaintiffs' counsel engaged in numerous discussions with Named Plaintiff and counsel for Defendants to determine the scope of Plaintiffs' claims and the defenses which would be asserted. Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to whether some or all of the claimed wages were actually compensable. Furthermore, arguments were raised by Defendant that they acted in good faith and would potentially be able to defend against an assessment of liquidated damages as well as limiting the class period to two (2) years prior to the filing of the action. The FLSA Settlement Fund, therefore, provides compensation to participating Class Members of all wages allegedly due as well as approximately 100% liquidate damages, exclusive of attorneys' fees and costs.

Importantly, only Class Members who affirmatively opted in to this litigation will release their alleged claims.

The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those members of the Plaintiff Class who opted in to this litigation. "Released Claims" is defined in the Settlement Agreement, *in toto*, as follows:

> any and all charges, complaints, claims, obligations, demands, actions, rights, causes of action, liabilities, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages) of any kind, whether known or unknown, that Named Plaintiff and/or Plaintiffs have or might have had against Defendant or any Defendant Releasee in connection with the facts, transactions, occurrences, acts or omissions alleged in the Complaint, or that could have been asserted in the Litigation based on the facts alleged in the Complaint from three years prior to the filing of the Complaint through the date of signature of this Settlement Agreement by the Named Plaintiff, arising under the FLSA, or under any state or local law, whether known or unknown, and whether anticipated or unanticipated, including claims for wages, overtime pay and overtime premium pay, per diem payments, claims for missed meal and or rest periods, claims of retaliation, penalties, liquidated damages, interest, attorneys' fees, litigation costs, or equitable relief, arising out of Defendant's alleged failure to properly compensate Plaintiffs.

No Class Member other than Named Plaintiff is granting a general release of claims.[2]

The front of each Payment Check will include the following statement: "SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED" and the back of the Payment Check will state, "By endorsing this check, I confirm I am an opt-in plaintiff in *Joseff DaNiell, et al. v. Figure 8 Communications, Inc.*, 3:20-CV-00125-KRG (WDPA), and consent to be bound by the settlement agreement and release in that matter."

Procedurally, the Parties agree that within thirty (30) days of the Court's Order approving the settlement, Defendant will issue payment to all putative Class Members who have returned the Opt-In forms within the prescribed time frame.

---

[2] Named Plaintiff is granting an individual general release of claims in exchange for his individual retaliation/wrongful termination claim(s) asserted in this litigation that are being settled separate and apart from the Plaintiff Class and FLSA Settlement Fund.

6

**Argument**

I.     **The FLSA's One-Step Standard for Approving Collective Action Settlements**

This lawsuit was settled on behalf of 12 opt-in plaintiffs (including Named Plaintiff) who had previously elected to participate in the litigation by filing a Consent to Join form pursuant to Section 16(b) of the FLSA.  Approval of settlements under this FLSA framework are single-step (unlike Rule 23's two-step process) and require the Court to find only that the proposed settlement collective is "similarly situated" and the relief is fair and reasonable. *See, e.g., Alvarez v. BI Inc.*, 2020 WL 1694294, at *3 (E.D. Pa. Apr. 6, 2020).

First, the Court must determine that the collective is "similarly situated" such that granting final collective certification for the 12 opt-in plaintiffs is appropriate. *See, e.g., Alvarez*, 2020 WL 1694294, at *3 ("Before I discuss approval of the settlement, I must first consider final certification of the collective action."). "Being 'similarly situated' ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012)).

Second, the Court must make a finding that the settlement is fair and reasonable resolution of a *bona fide* dispute. *See Alvarez*, 2020 WL 1694294, at *4-5. When district courts within the Third Circuit evaluate the fairness of collective action settlements under the FLSA— and thus also the EPA—they look to the Eleventh Circuit's seminal decision in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g., Huyett v. Murlin*, 2018 WL 3155795, at *1 (M.D. Pa. June 28, 2018) (Rambo, J.).  The Eleventh Circuit's opinion in *Lynn's Food Stores* instructs the district court to assess whether the proposed

settlement "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Huyett*, 2018 WL 3155795, at *1 (quoting *Lynn's Food Stores*, 679 F.2d 1350, 1355).

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-

1354.  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354.  If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation.  *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*."  *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012).  This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II.     The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action.  This Court previously granted Named Plaintiff's request to conditionally certify the following the Class in this litigation: "[a]ll current and former employees of Figure 8 Communications, Inc. who were paid on a piece rate basis at any time within the period from three (3) years prior to July 2, 2020, to July 2, 2020, and at any time within the period from July 2, 2020 to the present."  Because of these key similarities, including job function, location and time frame, the Court may readily conclude the employees are "similarly situated" and grant final certification for purposes of effectuating this Settlement.

### III.     The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings. In their Complaint, Named Plaintiff presented detailed allegations regarding Figure 8's policies and practices. In its Answer, Defendant denied Named Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Named Plaintiff's and the Class Members' claims in whole or in part. Through cooperative, informal exchange of payroll data and other relevant job-related information, the Parties extensively investigated Named Plaintiff's claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. The settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation in the mediation.

### IV.     The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

#### A.     A *Bona Fide* Dispute Existed Between the Parties

Plaintiffs allege Defendant violated the FLSA and Pennsylvania wage law because it allegedly failed to pay overtime for work performed on a piece rate basis and paid piece rates below the correct amounts. Defendant denies Plaintiffs' allegations, contends that its policies

10

and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Plaintiffs' allegations ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement, including additional potential damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution.  If Defendant prevailed, then Plaintiffs would obtain no recovery of any kind.  The Parties' positions were staked out in the Parties' pleadings and at the mediation, and the Court should readily conclude a *bona fide* dispute between the parties existed.

> B.  **The Proposed Settlement Is Fair and Reasonable**

This Settlement was the product of arm's-length negotiations by experienced counsel and compensates the Class for the full value of their alleged unpaid wages during the applicable time period, less any amount already paid by Defendant to any Plaintiff during the pendency of this litigation in an effort to correct any alleged wrongdoing, plus approximately 100% liquidated damages, free and clear of attorneys' fees and expense, and subject to a $500 minimum payment. The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury.  As a compromise, and to provide Defendant with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $27,500.00.  Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, and because the time upon which the FLSA Settlement Fund is based represents 100% of the wages allegedly due to the Class members after as represented by data provided by Figure 8.  In sum, these are patently reasonable compromises

11

in light of the risks and costs associated with prosecuting the case to a jury trial. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness). Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements. This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Plaintiffs' and the Class Members' claims and the viability of Defendants' defenses. If litigation continues, Plaintiffs and the putative class would face many obstacles, including (i) the risk that the case would not be certified for a Rule 23 Class Action; (ii) challenges to proving damages; (iii) risk of decertification; and (iv) the inherent risks of a jury trial. The proposed Settlement brings immediate monetary value to each of the class members who elect to participate. Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. For instance, Defendant contended that its employees were properly compensated under state and federal law, and that any failure to pay its

employees was in good faith. If the jury were to agree with Defendants, Plaintiff would likely recover little or nothing.

Moreover, Plaintiff would have to maintain collective action and obtain Rule 23 Class Certification class to present class-wide claims to a jury. Although Defendant concedes the potential class members are similarly situated for settlement purposes, they would have vigorously argued that various differences in job duties and responsibilities preclude class and final collective action certification had litigation continued. Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings class members meaningful monetary value now, not years from now, and provides certainty regarding the outcome. *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial. Plaintiffs would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire class. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V. The Court Should Approve Class Counsel's Separate Award of Attorneys' Fees and Litigation Expenses

Consistent with the FLSA's provision that successful plaintiffs' counsel be awarded a "reasonable attorneys' fee to be paid by the defendant," *see* 29 U.S.C. § 216(b), the parties have settled the attorneys' fee and cost issue as part of the Settlement Agreement. Separate from and in addition to the significant relief the settlement provides to the opt-in plaintiffs, Figure 8 has agreed to pay Class Counsel $19,000.00 for their attorneys' fees and litigation expenses. This fee award is a significant discount on Class Counsel's lodestar—in fact, it represents a *negative multiplier of 0.46*. Under the circumstances, the parties' compromise on attorneys' fees and costs should be approved.

**The FLSA Requires a Separate Award of Attorneys' Fees**

As Plaintiffs' lodestar analysis below makes clear, Class Counsel invested significant resources for over two (2) years to obtain near make-whole relief for the opt-in plaintiffs. That Class Counsel's request for fees and costs exceeds the recovery for the collective is both common and expected in

14

prosecuting claims enforced by the FLSA's Section 16(b). This case exemplifies why the FLSA contains an attorneys' fee shifting provision.

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Unlike most fee-shifting statutes, the attorneys' fee award under the FLSA is mandatory. *Compare* 29 U.S.C. § 216(b) (a court "shall" award fees) *with* 42 U.S.C. § 1988(b) (a court "may" award fees "in its discretion"). The "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709-10 (1945), Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b). Thus, a prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs. *See Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011) (approving fee award larger than damages obtained). A plaintiff's counsel who successfully pursues wage and hour claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC*, No. 08-CV-05811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010); *see also Sand v. Greenberg*, No. 08-CV-07840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *Andersen v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, at *5 (D. Neb. Apr. 18, 2013) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process…").

15

"The FLSA is a uniquely protective statute" and its "remedial purpose [is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 207 (2d Cir. 2015). Consistent with the remedial purpose of the FLSA, it is not uncommon for attorneys' fees and costs to exceed the recovery to the employees as has occurred in this case. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) ("a fee may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."); *see also Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. App'x 341, 342 (5th Cir. Jan. 30, 2007) ("Given the nature of claims under the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples."). As the Second Circuit explained last year, employees may have claims of a modest value under the FLSA; however, the FLSA is uniquely protective statute that incentivizes attorneys to right these wrongs through the FLSA's attorney fee shifting provision: "If plaintiff's attorneys in these so-called 'run of the mill' FLSA actions are limited to a proportional fee of their client's recovery… no rational attorney would take on these cases unless she were doing so essentially pro bono." *Fisher*, 948 F.3d at 604.

The Court should approve Class Counsel's request for attorneys' fees and litigation expenses pursuant to the parties' compromise on the issue.

**The Lodestar Analysis Confirms the Separate Award of Fees and Costs is Reasonable**

"The lodestar method, normally applied in statutory fee-shifting cases, multiplies the number of hours counsel reasonably worked by a reasonable hourly rate." *McGee v. Ann's Choice, Inc*., 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014) (citing *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 734 (E.D.Pa. 1995)).

Given the nature of this settlement (a make-whole relief with a separate award of attorneys' fees and costs) and that it was reached under the auspices of the FLSA's fee-shifting provisions, the Court should apply the lodestar method to confirm the reasonableness of the discounted fee award. Over the course of more than two (2) years, Class Counsel has expended over 100 hours for a total lodestar of $45,000.00. The proposed settlement provides Class Counsel with $19,000.00 to compensate them for

16

attorneys' fees and costs. When advanced litigation expenses are deducted from the fee and cost award ($1,000), the award of attorneys' fees to Class Counsel is $18,000.00. This results in an hourly rate of $300.00 and a *negative* lodestar multiplier of 0.46. This is inherently reasonable. *See, e.g., McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 657 (E.D. Pa. 2015) ("a negative multiple of .349 or .37 is well under the generally acceptable range and provides strong support for approving the fee request.").

The $300.00 blended hourly rate—well below Class Counsel's customary hourly rates—is reasonable for purposes of settlement. For example, the Third Circuit has cited with approval to the Community Legal Services of Philadelphia ("CLS") hourly rate schedule.[3] *See, e.g.*, *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) ("The fee schedule established by [CLS] been approvingly cited by the Third Circuit…") (internal quotations omitted). On the CLS rate schedule, the primary timekeepers in this case would *all* be entitled to hourly rates at or above the $300.00 hourly rate recovered through settlement.

Likewise, the number of hours expended is reasonable given the subject matter, duration, and disputed nature of the litigation. Class Counsel has expended over 100 hours—a number sure to increase through settlement administration—prosecuting this case since it was initiated in mid-2020. As the Court is aware, this case had featured two (2) Mediation Conferences, a motion for conditional certification with oral argument, motion practice related to the content of the collective notice, notice to putative plaintiffs, bifurcated discovery, the exchange and analysis of comprehensive wage and hour data, and an ongoing and lengthy settlement process. Class Counsel reasonably expended a significant amount of time to obtain this result for the opt-in plaintiffs.

As the Third Circuit has made clear, "the lodestar is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). And, here, where Class Counsel has agreed to discount of roughly *half* of their lodestar to facilitate an excellent

---

[3] https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited September 2, 2021)

settlement for the opt-in plaintiffs, the Court can readily conclude that the $19,000.00 stipulated amount of attorneys' fees and costs for Class Counsel is reasonable.

**Other Relevant Factors Confirm the Attorneys' Fee Award Is Reasonable**

First, Class Counsel are skilled attorneys who specialize in wage and hour class and collective actions, and they brought this skill and efficiency to bear in achieving a favorable result for opt-in plaintiffs in this case.

Second, this litigation was both lengthy and complex spanning over two (2) years with multiple rounds of contested motion practice on complicated legal issues. For example, the parties vigorously disputed whether Defendants payments to certain Class Members could nullify their claims and ability to proceed as a collective/class. These issues are unique and fact-intensive, which weighs in favor of approving Class Counsel's requested fee.

Third, the risk of non-payment in this case was material. Class Counsel took this case on a contingency and have been paid nothing for their time thus far. As outlined above, Class Counsel faced legitimate risks of decertification, summary judgment, and loss at trial. If any of those events occurred—or if Class Counsel had not prevailed on the motion for conditional certification—Class Counsel would have recovered nothing for their time. This risk weighs in favor of approving Class Counsel's requested fee.

Fourth, the amount of time devoted to this case—as discussed in more detail above as part of the lodestar analysis—weighs in favor of approving Class Counsel's requested fee. Class Counsel has expended over 100 hours and advanced litigation expenses without payment or reimbursement for over two (2) years. This work has been both necessary and crucial to bringing this result to fruition for opt-in plaintiffs. The amount of time expended—particularly given the negative lodestar multiplier—weighs in favor of approving Class Counsel's requested fee.

Based on the foregoing, the Court may readily conclude that Class Counsel's discounted request for attorneys' fees is reasonable and should be approved.

### The Court Should Approve Class Counsel's Reasonable Litigation Expenses

As part of the stipulated $19,000.00 fee and cost award, Class Counsel seek reimbursement of advanced litigation expenses totaling $1,000.00. These expenses include costs associated with filing the complaint, service of process, notice administration (*e.g.*, postage, printing), mediation, deposition transcripts, and travel and associated with depositions. The Court should grant reimbursement of these expenses because they were reasonably incurred to facilitate the prosecution and settlement of this litigation. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 125 (D.N.J. 2012) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.").

### CONCLUSION

Based on the foregoing, Class Counsel respectfully requests the Court grant final approval of the collective action settlement, approve the requested service awards, and approve the requested attorneys' fees.

Respectfully Submitted:

**WEISBERG CUMMINGS, P. C.**

Date: September 20, 2022

/s/ Derrek W. Cummings
Derrek W. Cummings, Esquire
Larry A. Weisberg, Esquire

2704 Commerce Drive, Suite B
Harrisburg, PA 17110
Phone: (717) 238-5707
Fax: (717) 233-8133

*Plaintiffs' Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

*/s/ Derrek W. Cummings*
Derrek W. Cummings, Esquire
